```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/12/19
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
SAMMY ORTIZ,

      Petitioner,

      -against-

UNITED STATES OF AMERICA

      Respondent.
------------------------------------------------------------x

13 Cr. 687 (RMB)
16 Civ. 4595 (RMB)

**DECISION & ORDER**

## I. Background

On June 16, 2016, Sammy Ortiz ("Ortiz" or "Petitioner") petitioned pursuant to 28 U.S.C. § 2255 to vacate his sentence of 72 months imprisonment which was imposed on November 4, 2014. See Motion to Vacate, dated June 16, 2016 ("Pet.'s Motion"); see also Judgment, dated November 4, 2014. Ortiz contends that he was improperly sentenced because two prior felony convictions resulted in his being treated as a Career Offender under the advisory U.S. Sentencing Guidelines § 4B1.1 and because those two convictions, he alleges, are "no longer 'crimes of violence.'" See Pet.'s Motion at 5.[1]

It should be noted that the Court sentenced Ortiz to 72 months pursuant to the 18 U.S.C. § 3553(a) factors and that he received what is called a "below guidelines" sentence based upon the Court's § 3553(a) analysis. See Transcript, dated November 4, 2014 ("Sentencing Tr."), at 7, 21 (Court: "I am in fact considering . . . all of the factors under 18 U.S.C. § 3553(a) in arriving at

---

[1] The Court understands that the two prior felony convictions which Ortiz complains about are: **(1)** Attempted Assault in the Second Degree, on April 6, 1999, while Ortiz was incarcerated at Coxsackie Correctional Facility in violation of N.Y. Penal Law § 120.05(7); and **(2)** Attempted Robbery in the Third Degree, on April 15, 2010, in violation of N.Y. Penal Law § 160.05. See Plea Agreement, dated July 2, 2014, at 4, 6; Presentence Report, dated Oct. 9, 2014 ("PSR"), at 9, 12.

1

what I think is a reasonable sentence. . . . Having considered the factors of 18 U.S.C. § 3553(a), it is my judgment that Sammy Ortiz be committed to the custody of the Bureau of Prisons to be imprisoned for a term of 72 months . . . .").

Ortiz was indicted in this case on June 16, 2014 on the following four counts: one count of conspiring to possess and distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 and three counts of possessing with an intent to distribute heroin and cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 812, and 18 U.S.C. § 2. See Superseding Indictment, dated June 16, 2014, ¶ 1-3.[2] On July 2, 2014, Ortiz and the Government entered into a plea agreement ("Plea Agreement") in which Ortiz agreed to plead guilty (only) to Count One, i.e., conspiracy to distribute and possess with an intent to distribute heroin and cocaine in violation of 21 U.S.C. § 846 and 841(b)(1)(C) in satisfaction of the Indictment. See Plea Agreement, dated July 2, 2014, at 1 ("On the understandings specified below, the Office of the United States Attorney for the Southern District of New York . . . will accept a guilty plea from Sammy Ortiz . . . to count Count One of the . . . Superseding Indictment.").[3]

---

[2] The original Indictment was filed by the Government on September 6, 2013. Indictment, dated Sept. 6, 2013.

[3] At the time of his plea, Ortiz was represented by Martin Cohen, a Federal Public Defender. Transcript, dated July 28, 2014 ("Plea Allocution Tr."), at 1. Following receipt of Ortiz's written submission entitled "Motion to Fire My Public Defender Martin Cohen of ineffective assistance of council over fraud" in late May 2017, Cohen requested that Federal Public Defenders be relieved from further representing Ortiz. See Letter, dated May 24, 2017, at 1. The Court granted Cohen's application on June 7, 2017, and at the same time appointed CJA counsel Stephanie Carvlin, Esq., to represent Ortiz. Memo Endorsement, dated June 7, 2017, at 1. Ms. Carvlin has continued to represent the Petitioner to the present.

Ortiz also executed an advice of rights form which states that he is "pleading guilty because after discussing the case with [his] attorney [he] believe[s] that [he is] guilty," and that

The Plea Agreement includes an explicit waiver of appeal. It states that "the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or section 2241...."

In the Plea Agreement, Ortiz also stipulated to a "Guidelines range [of] 151 to 188 months' imprisonment" based upon an Offense Level of 29 and a Criminal History Category of VI. Id. at 15-16; see also Plea Allocution Tr. at 16-17 (Court: "The agreement says that the offense level is 29, the criminal history category is VI. . . . [This results in a] sentencing range of 151 to 188 months of incarceration. . . ." . . . Court: "Do you realize that, Mr. Ortiz?" Ortiz: "Yes, your Honor."). Id. at 6, 15-16. Ortiz also "acknowledged that he has accepted this [Plea] Agreement and decided to plead guilty because he is in fact guilty." Id. at 7-8.

On July 28, 2014, Petitioner pled guilty before this Court, as noted, to conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846, 841(b)(1)(C). See Transcript, dated July 28, 2014 ("Plea Allocution Tr."), at 3. Ortiz admitted that he "knowingly conspired to violate the narcotics laws of the United States" and that "[i]t was part and an object of the conspiracy that he and others would and did distribute and possess with an intent to distribute both heroin and cocaine." Id. at 10. Ortiz also acknowledged that he is a Career Offender. Id. at 15 (Court: "[I]t is agreed in [the Plea] agreement that Mr. Ortiz is a career offender . . . . Do you realize that, Mr. Ortiz?" Ortiz: "Yes, your Honor.").

In their respective sentencing submissions, the Defense and the Government each agreed that Petitioner's "applicable United States Sentencing Guidelines . . . range is 151 to 188 months' imprisonment based on the defendant's status as a Career Offender." See Government's

---

he is "satisfied with how [his] attorney has represented [him]." Advice of Rights Form, dated July 28, 2014, at 1.

3

Sentencing Memoranda, dated October 28, 2014, at 2; Sentencing Memorandum on Behalf of Sammy Ortiz ("Ortiz Sentencing Memorandum"), dated October 26, 2014, at 7 n.7 ("Mr. Ortiz qualifies as a Career Offender under the Guidelines, which results in a range of 151 to 188 months.").

At sentencing, the Government argued for a Guidelines sentence because, in part, of the Petitioner's extensive criminal history. See Sentencing Tr. at 16-17 (AUSA Graham: "The defendant . . . . has committed crimes almost continuously since the age of 16 . . . . Really the only pauses have been while he has been incarcerated."); see also Government's Sentencing Memoranda at 2 ("[T]he defendant has amassed an extensive criminal history over the past twenty years. He has been arrested and charged with 42 different crimes, including 22 felonies, on 22 occasions prior to his arrest for the instant offense. He has been convicted of four felonies and sixteen misdemeanors, including felony convictions for crimes of violence and two felony convictions for firearms possession" (citations omitted)).

At sentencing, Petitioner sought a below guidelines sentence. See Sentencing Tr. at 9 (Defense Counsel Cohen: "I urge the Court to sentence Mr. Ortiz much closer to the 30 months that we've requested . . . ."). As noted on p. 1 supra, the Court imposed a below guidelines sentence of 72 months.

**For the reasons set forth below, Ortiz's application to vacate his sentence is denied.[4]**

**II.     Legal Standard**

---

[4]     **Any arguments raised by the parties but not specifically addressed herein have been considered by the Court and rejected.**

"Knowing and voluntary waivers of a defendant's right to appeal a sentence within an agreed Guidelines range are enforceable." United States v. Belin, 66 F. App'x 247, 249 (2d Cir. 2003).

Collateral relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

N.Y. Penal Law § 120.05 is the New York State statute that defines second degree assault. It delineates 14 separate subsections (offenses), including subsection (7) which uniquely applies to defendants who have been convicted of a crime and are confined in a correctional facility. Subsection (7) seeks to maintain "a safe environment . . . for both inmates and [prison] employees" by "creat[ing] a deterrent effect that is necessary to stem assaultive behavior by inmates." See Margaret L. Weiss, The City of New York Office of the Mayor Memorandum in Support of Bill, S. 6204-A, at 1 (N.Y. 1981). The First Circuit Court of Appeals has recently determined that N.Y. Penal Law § 120.05(7) is a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. 18 § 924(e), principally because there is no "realistic probability of violating § 120.05(7) . . . without using violent force." Lassend v. United States, 898 F.3d 115, 127 (1st Cir. 2018), cert. denied, No. 18-7642, 2019 WL 416251 (U.S. Mar. 4, 2019).

"[T]hird-degree robbery in New York requires the use or threat of immediate physical force upon another . . . . Plainly then, the elements of this offense constitute a crime of violence

5

under the force clause of the Career Offender Guidelines . . . .'" United States v. Moore, No. 16-1604, 2019 WL 903976, at *7 (2d Cir. 2019) (quoting U.S.S.G. § 4B1.2(a)(1)).

## III. Analysis

### (1) Ortiz's Appeal Waiver

Ortiz's motion fails because he waived his right to pursue a habeas challenge to his sentence. See Plea Agreement dated July 2, 2014, at 7 ("It is agreed . . . that the defendant will not . . . bring a collateral challenge, including but not limited to an application under Title 28, United States Code Section 2255 and/or Section 2241 . . . ."). Petitioner confirmed at his plea hearing on July 28, 2014 that he was knowingly waiving his appeal rights. See Plea Allocution Tr. at 16-17 (Court: "[T]here is a . . . a provision in [the Plea Agreement] that waives appeal rights. It says, in summary, that Mr. Ortiz agrees not to file a direct appeal. It also says that he agrees not to bring what's called a collateral challenge, including but not limited to an application under either 28 U.S.C. 2255 and/or 2241 . . . . [I]s that your understanding of the waiver of appeals?" AUSA Graham: "Yes, your Honor." Court: "Mr. Cohen?" Defense Counsel Cohen: "Yes." Court: "Do you understand that . . . Mr. Ortiz?" Ortiz: "Yes, your Honor.").

Petitioner's knowing and voluntary waiver of his right to appeal is enforceable and is a bar to his Petition. See, e.g., United States v. Morales, 709 F. App'x 93, 94 (2d Cir. 2018).

### (2) Ortiz's Prior Convictions of Attempted Second Degree Assault While Incarcerated and Robbery in the Third-Degree Are Each "Crimes of Violence"

Even assuming arguendo that Ortiz had not waived his right to bring his Petition to vacate his sentence under 28 U.S.C. § 2255, Ortiz's application would likely be denied on the merits because each of the two prior felony convictions at issue is a crime of violence under U.S.S.G. § 4B1.2(a)(1). Ortiz was properly sentenced as a Career Offender based upon his prior

6

convictions of Attempted Second Degree Assault by a convicted prisoner under N.Y. Penal Law § 120.05(7) and Attempted Robbery in the Third Degree under N.Y. Penal Law § 160.05. See Plea Agreement, at 4, 6; see also Plea Allocution Tr. at 15; Sentencing Tr. at 9.

### N.Y. Penal Law § 120.05(7)

Petitioner's prior conviction, on April 6, 1999, of Attempted Second Degree (Convicted Prisoner) Assault under N.Y. Penal Law § 120.05(7) is a "crime of violence."[5] See Lassend, 898 F.3d at 127. Ortiz was, at the time, a prisoner at Coxsackie Correctional Facility and was serving a sentence of eight years for criminal possession of a weapon in the second degree. PSR at 9. N.Y. Penal Law § 120.05(7) applies (only) to a person who was "convicted of a crime and while confined in a correctional facility, . . . with intent to cause physical injury to another person, [] causes such injury to such person or to a third person," and includes the use of violent physical force. See United States v. Lassend, 2017 WL 2960518, at *11 (D. Mass. July 11, 2017), aff'd, 898 F.3d 115 (1st Cir. 2018), cert. denied, No. 18-7642, 2019 WL 416251 (U.S. Mar. 4, 2019) (N.Y. Penal Law § 120.05(7) "has as an element, the use of 'violent force,' meaning force capable of causing physical pain or injury to another person."); see also United States v. Jones, 878 F.3d 10, 21 n.3 (2d Cir. 2017).

While there does not appear to be a Second Circuit Court of Appeals decision which addresses the issue, the First Circuit Court of Appeals has recently held that a conviction under N.Y. Penal Law § 120.05(7) qualifies as a violent felony under the ACCA's "force clause"

---

[5]  Ortiz's Presentence Report ("PSR"), dated October 9, 2014, describes his assaultive conduct as follows: "[While in Coxsackie Correctional Facility,] Ortiz produced a 5 inch 'shank' type of weapon and swung it at two other inmates. In the course of [a corrections officer] breaking up the incident, Ortiz swung the weapon at a corrections officer causing a puncture wound." PSR at 9.

7

because it contains "as an element, the use of 'violent force,' meaning 'force capable of causing physical pain or injury to another person.'" See Lassend, 898 F.3d at 118. **Cases interpreting the ACCA's definition of a violent felony, such as Lassend, "are highly persuasive in interpreting the Guidelines' definition of 'crime of violence.'"** United States v. Reyes, 691 F.3d 453, 458 n.1 (2d Cir. 2012) (emphasis added).

In Lassend, the First Circuit recognized the unique public safety objective of § 120.05(7), reasoning that there is no "realistic probability of violating § 120.05(7)—which requires that the assault be committed by a prisoner in a correctional facility—without using violent force." 898 F.3d at 127. The Court went on to say that "[i]t is hard to imagine how a prisoner could intentionally cause physical harm to someone in prison by, for instance, failing to fulfill a legal duty." Id. The Lassend Court also observed that the litigants did not and could not "point us to a single New York case in which a conviction under § 120.05(7) has been obtained based on nonviolent conduct. Because we are not supposed to imagine fanciful, hypothetical scenarios in assessing what the least serious conduct is that the statute covers, we conclude that [defendant's] conviction under § 120.05(7) qualifies as a violent felony." Id. This Court agrees with the Lassend court's analysis and its conclusion.

N.Y. Penal Law § 120.05(7) is most assuredly a crime of violence based upon the plain meaning of the statute and the conclusion and logic of Lassend. The description of Ortiz's conduct in the PSR is thoroughly compatible with the conclusion that § 120.05(7) is a crime of violence. The PSR describes Ortiz's prior felony conduct while he was incarcerated at the Coxsackie Correctional Facility and following his conviction of criminal possession of a weapon in the second degree as follows: "Ortiz produced a 5 inch 'shank' type of weapon and swung it at

8

two other inmates. In the course of [a corrections officer] breaking up the incident, Ortiz swung the weapon at a corrections officer causing a puncture wound." See PSR at 9.[6]

Two courts in this District have considered whether convictions under subsections of N.Y. Penal Law § 120.05 **other than** subsection (7) were crimes of violence. These other subsections were N.Y. Penal Law **§§ 120.05(10)** and **120.05(1)**. § 120.05(10) requires that a person "on school grounds and with intent to cause physical injury, . . . causes such injury to an employee of a school or public school district." § 120.05(1) requires that a person "[w]ith intent to cause serious physical injury to another person, [] causes such injury to such person or to a third person."

In United States v. Torres, the court held that § 120.05(10) is a crime of violence under Sentencing Guidelines section 2K2.1(a)(4)(A) reasoning that:

> [I]t is hard to fathom a scenario where a person comes on to school grounds to not commit an act or to omit an act that causes an injury, and even if it is possible to conjure up such a scenario, the absence of any such case . . . signals that that is not enough for this to be treated as something other than a crime of violence. 16-cr-767, Dkt. 37 at 22-23.

In United States v. Brown, the court held that § 120.05(1) does not set forth a crime of violence under Sentencing Guidelines section 2K2.1(a)(4)(A), concluding that "because injury can be caused by, among other things, deliberate omissions—e.g., a physician withholding

---

[6] Ortiz did not object to this description of his conduct. See Sentencing Tr. at 9 (Defense Counsel Cohen: "[Y]our Honor, I've reviewed the presentence report with Mr. Ortiz. We have no objections to the facts as set forth in the report or the guidelines calculation therein." Court: "OK. And just to confirm, Mr. Ortiz, you've been over that [presentence] report with Mr. Cohen?" Ortiz: "Yes, your Honor.". . . Court: "I'm going to adopt the findings of the fact in the presentence report unless there is any objection. There appeared not to be from defense . . . ." Defense Counsel Cohen: "That's correct, your Honor." Court: "Any objection from Mr. Ortiz?" Ortiz: "No, your Honor.").

9

life-saving medication," § 120.05(1) "cannot categorically be a 'crime of violence.'" 322 F. Supp. 3d 459, 463 (S.D.N.Y. 2018).

Neither Torres nor Brown involves a defendant who had been convicted of a crime and confined in a correctional facility under § 120.05(7), although Torres perhaps comes closer by including a defendant's presence on school grounds as an element of second degree assault.

### N.Y. Penal Law § 160.05

Petitioner's contention that Attempted Robbery in the Third Degree is not a "crime of violence," is foreclosed by a recent Second Circuit Court of Appeals decision holding that Attempted Robbery in the Third Degree in New York is a "crime of violence" under U.S.S.G. § 4B1.2(a)(1). United States v. Moore, No. 16-1604, 2019 WL 903976, at *7 (2d Cir. 2019) ("[T]hird-degree robbery in New York requires the use or threat of immediate physical force upon another . . . . Plainly then, the elements of this offense constitute a crime of violence under the force clause of the Career Offender Guidelines . . . .").

## IV. Certificate of Appealability

The Court does not recommend that a certificate of appealability be issued because Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); see United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997).

## V. Conclusion & Order

For the reasons stated herein, Ortiz's motion [#95, #1] is denied. The Clerk of Court is respectfully requested to close the civil case (16-cv-4595).

Dated: New York, New York
March 12, 2019

*RMB*
RICHARD M. BERMAN
U.S.D.J.